**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**THOMAS BLAKE GILUSO**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO. 19-1301**

**TAURUS INTERNATIONAL**                                   **SECTION: "G"(2)**
**MANUFACTURING, INC., et al.**

## ORDER AND REASONS

Before the Court is Plaintiff Thomas Giluso's ("Plaintiff") "Motion to Enforce November 6, 2019 Settlement Agreement Between the Parties."[1] Defendant Taurus International Manufacturing and Defendant Taurus Holdings (collectively, "Defendants") oppose the instant motion.[2] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion to the extent it requests the settlement agreement be enforced and denies the motion to the extent it requests attorney fees and costs.

## I. Background

On February 12, 2019, Plaintiff filed a complaint against Defendants in this Court.[3] In the Complaint, Plaintiff alleges that while carrying a Taurus Millennium pistol (the "pistol") with the safety switch engaged, the pistol unexpectedly discharged without the trigger being pulled.[4] Plaintiff contends that he suffered several personal injuries, including losing one finger on his left

---

[1] Rec. Doc. 26.

[2] Rec. Doc. 29.

[3] Rec. Doc. 1.

[4] *Id.* at 2.

1

hand.[5] Plaintiff brought a products liability claim against Defendants for manufacturing an unreasonably dangerous product under the Louisiana Products Liability Act.[6]

In September 2019, the parties began conducting settlement negotiations.[7] On October 31, 2019, Defendants made a final "take-it-or-leave-it" settlement offer to Plaintiff.[8] That offer read as follows:

> In exchange for our client's payment of $10,000 to your client, your client provides a full release, dismissal with prejudice, return of the subject pistol, confidentiality and non-disparagement agreement, all subject to the terms of a written settlement agreement. This is a final, take-it-or-leave it offer. This offer expires at close of business on Monday, November 4, 2019.[9]

On November 5, 2019, one day after Defendants' offer expired, Plaintiff's counsel responded with Plaintiff's settlement offer.[10] Plaintiff's settlement offer read as follows:

> I am just getting back into the office after being out of town. We got with [Plaintiff]. If Taurus can fund settlement within 30 days, he [Plaintiff] is agreeable to settling for $10,000—along with returning the gun, confidentiality and non-disparagement; however, we will not incur any expenses related to returning the gun. If you wish, we can get it over to your local counsel.[11]

At 10:45 a.m. on November 6, 2019, Defendants' counsel responded to Plaintiff's settlement offer:

> Our offer expired Monday. But as to your offer, we are checking with our client on whether they agree to payment within 30 days. I expect that we can convince them of that. We will let you know when we hear back. We are also checking with

---

[5] *Id.*

[6] *Id.* at 3.

[7] Rec. Doc. 26-4 at 25; Rec. Doc. 29-1 at 21.

[8] Rec. Doc. 26-4 at 19; Rec. Doc. 29-1 at 17.

[9] Rec. Doc. 26-4 at 19; Rec. Doc. 29-1 at 17.

[10] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[11] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

our local counsel on accepting the subject pistol.[12]

At 4:02 p.m. on November 6, 2019, Defendants' counsel sent Plaintiff's counsel the following

email:

> We have been instructed by our client to accept your offer [dated November 5,
> 2019]. We have confirmed that our client can make payment within 30 days from
> receiving a signed copy of the release agreement—which I'll draft for your review
> now. We have also confirmed with our local counsel that they are agreeable to
> receiving the subject firearm from you.[13]

At 5:07 p.m. on November 6, 2019, Defendants' counsel emailed a release agreement for

Plaintiff's counsel review.[14] The release agreement stated that Plaintiff's counsel would also be

bound by the confidentiality and disparagement provisions.[15] At 6:02 p.m. on November 6, 2019,

Plaintiff's counsel responded:

> I'll get you a more detailed response/redline tomorrow, but at first glance I just
> want to give you a heads up: we have a firm policy that we, as our clients'
> attorneys, will never agree to be bound to anything in a settlement release – that
> includes the non disparagement and non discloser agreement in this case. This is
> a settlement between your client and ours. We are not a party to the litigation or
> the release. We have never and will never be bound by such a provision – for
> obvious reasons.[16]

On November 7, 2019, Plaintiff informed this Court via email that all parties had reached

a settlement agreement in this matter.[17] That email read as follows: "The purpose of this email is

to alert the Court that the parties in this matter have reached a settlement and are working on the

---

[12] Rec. Doc. 26-4 at 17; Rec. Doc. 29-1 at 15.

[13] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[14] Rec. Doc. 26-4 at 15; Rec. Doc. 29-1 at 14.

[15] Rec. Doc. 29-2 at 6–7.

[16] Rec. Doc. 29-1 at 14.

[17] Rec. Doc. 21.

terms of the release. We would appreciate it if the Court issued the appropriate 60 day order of dismissal."[18]

On November 8, 2019, the Court issued a 60-day order of dismissal.[19] The parties continued having difficulty over whether the agreed upon confidentiality provision and non-disparagement provision applied to Plaintiff's counsel.[20] On December 17, 2019, the parties conducted a telephone status conference before the Magistrate Judge to discuss the status of the settlement.[21] The telephone status conference with the Magistrate Judge did not resolve the issue.[22]

Thereafter, the parties moved to extend this Court's 60-day order of dismissal.[23] On January 9, 2020, the Court extended its original 60-day order for forty-five days until February 20, 2020.[24] On February 19, 2020, Plaintiff filed the instant motion to enforce the settlement agreement between the parties.[25] On March 3, 2020, Defendants filed an opposition to the instant motion.[26] On March 10, 2020, with leave of Court, Plaintiff filed a reply memorandum in further support of the instant motion.[27] On March 11, 2020, the Court held oral argument on the instant

---

[18] *Id.*

[19] *Id.*

[20] Rec. Doc. 26-4 at 15; Rec. Doc. 29-1 at 14.

[21] Rec. Doc. 23.

[22] Rec. Doc. 26-4; Rec. Doc. 29-1.

[23] Rec. Doc. 24.

[24] Rec. Doc. 25.

[25] Rec. Doc. 26.

[26] Rec. Doc. 29.

[27] Rec. Doc. 32.

motion.[28]

## II. Parties' Arguments

### A.    *Plaintiff's Arguments in Support of the Motion*

Plaintiff argues that the parties agreed to an enforceable settlement agreement on November 6, 2019.[29] Plaintiff points to the settlement offer emailed to Defendants' counsel on November 5, 2019, which stated: "We got with [Plaintiff]. If [Defendant] Taurus can fund settlement within 30 days, he is agreeable to settling for $10,000.00 – along with returning the [g]un, confidentiality and non-disparagement [provisions] . . ."[30] According to Plaintiff, Defendants' counsel accepted the settlement offer on November 6, 2019: "We have been instructed by our client to accept your offer."[31] Plaintiff contends that Defendant's acceptance formed an enforceable settlement agreement between Plaintiff and Defendants under Louisiana law on November 6, 2019.[32]

Furthermore, Plaintiff argues that "[n]ever once prior to confection of the settlement agreement on November 6, 2019, was extending the confidentiality and non-disparagement clauses to Plaintiff's counsel ever mentioned, discussed, reduced to writing or negotiated by defense counsel."[33] Therefore, Plaintiff argues that extending the confidentiality and non-disparagement clause to Plaintiff's counsel "was simply not a term of the offered and accepted

---

[28] Rec. Doc. 33.

[29] Rec. Doc. 26-1 at 1.

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.*

[33] *Id.*

compromise, and it was not a part of the settlement negotiations."[34]

Finally, Plaintiff requests attorney fees incurred in attempting to resolve the settlement agreement dispute.[35] Plaintiff contends that this Court may assess attorney fees when a party acts in "bad faith, vexatiously, wantonly, or for oppressive reasons."[36] Plaintiff claims that Defendants' actions fall within this standard because their position is "contrary to the law and unsupportable."[37]

## B.    *Defendants' Arguments in Opposition to Motion*

Defendants provide two principal arguments in opposition to the instant motion.[38] First, Defendants argue that the parties never had a "meeting of the minds" as to the confidentiality term.[39] According to Defendants, the parties fundamentally misunderstood who the confidentiality provision covered.[40] Defendants contend that they believed the confidentiality provision covered both Plaintiff and his counsel.[41] On the other hand, Plaintiff believed the confidentiality provision covered only Plaintiff.[42] Therefore, without any "meeting of the minds," Defendants conclude that "no enforceable compromise was reached by the November 6, 2019

---

[34] *Id.*

[35] *Id.* at 8.

[36] *Id.*

[37] *Id.* According to Plaintiff, during a telephone status conference, the Magistrate Judge indicated that she would likely rule to enforce the November 6, 2019 settlement agreement without binding Plaintiff's counsel to the confidentiality and non-disparagement provisions. *Id.* at 8–9.

[38] Rec. Doc. 29.

[39] *Id.* at 11.

[40] *Id.*

[41] *See id.* at 12–13.

[42] *See id.*

emails."[43]

Second, Defendants argue that the parties do not have an enforceable agreement because a suspensive condition between the parties was never fulfilled.[44] Defendants contend that a substantive writing was a suspensive condition to any enforceable compromise.[45] Louisiana Civil Code article 1767 states: "[A] conditional obligation is one dependent on an uncertain event" and that "if the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."[46] Throughout settlement negotiations, Defendants allegedly "stressed that any resolution was subject to an agreement on all terms in a written and signed document."[47] Defendants contend the parties never agreed to any substantive writing in this matter.[48] Accordingly, Defendants conclude the parties never reached an enforceable compromise.[49]

## C.   Plaintiff's Reply in Further Support of the Motion

Plaintiff's reply memorandum makes two arguments in further support of the instant motion.[50] First, Plaintiff argues that the parties had a "meeting of the minds" on November 6, 2019 because Defendants accepted Plaintiff's written settlement offer—in which only Plaintiff agreed to be bound by the confidentiality and non-disparagement provisions.[51] Therefore,

---

[43] *Id.* at 12.

[44] *Id.* at 13.

[45] *Id.* at 13–14.

[46] *Id.* at 14.

[47] *Id.* at 13.

[48] *Id.* at 14.

[49] *Id.*

[50] Rec. Doc. 32.

[51] *Id.* at 1.

because the agreement's words are clear, Plaintiff concludes that the settlement agreement must be enforced without binding Plaintiff's counsel.[52] Otherwise, according to Plaintiff, "any party to any contract could claim they are not bound because there was no meeting of the minds as to a secret they never discussed or negotiated."[53]

Second, Plaintiff argues that the enforceable settlement agreement did not have a suspensive condition.[54] Plaintiff contends that every settlement is subject to general release terms, and such general release terms do not necessarily constitute a suspensive condition.[55] Plaintiff claims that Defendants' position "would gut all settlements entered into through correspondence, at mediation, at settlement conferences and in pretrial conferences, and would allow a party to withdraw from an agreed to settlement on a whim by attempting to add terms to the settlement that were not mentioned, discussed or negotiated."[56]

### III. Legal Standard

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties."[57] "Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally."[58] Under Louisiana law, settlement agreements are referred to as

---

[52] *Id.* at 2.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir. 1994).

[58] *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil*

"compromises."[59]

A compromise is valid when it possesses the essential elements of a general contract.[60] "Essential elements of a compromise include: (1) mutual intent to put an end to the litigation; and (2) reciprocal concessions of the parties in adjustment of their differences."[61] Compromises must meet certain requirements, including mutual intent evidence by offer, acceptance, and a writing.[62] "Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it."[63]

### IV. Law and Analysis

On November 5, 2019, Plaintiff's counsel sent Plaintiff's settlement offer to Defendants' counsel, which stated:

> We got with [Plaintiff]. If Taurus can fund settlement within 30 days, he [that is, Plaintiff] is agreeable to settling for $10,000—along with returning the gun, confidentiality and non-disparagement; however, we will not incur any expenses related to returning the gun. If you wish, we can get it over to your local counsel.[64]

At 10:45 a.m. on November 6, 2019, Defendants' counsel responded to Plaintiff's settlement offer:

> Our [previous] offer expired Monday. But as to your offer, we are checking with

---

& Gas, Inc., 861 F.2d 1378, 1380 (5th Cir. 1988) (internal quotation marks omitted)).

[59] La. Civ. Code art. 3071.

[60] Horace Mann Ins. Co. v. Casualty Reciprocal Exchange, 383 So. 2d 1040, 1042 (La. App. 1 Cir. 1980). See also Crawford v. United Serv. Auto. Ass'n, 2003–2117, (La. App. 1 Cir. 3/24/05); 899 So.2d 668, 671 ("A compromise is valid only if there is a meeting of minds between the parties as to exactly what they intended at the time the compromise was reached.").

[61] Towne v. Gee Const., C.A. No. 11-1884, 2013 WL 3832410, *2 (E.D. La. 2013) (citing Rivett v. State Farm Fire and Casualty Company, 508 So.2d 1356, 1359 (La. 1987)).

[62] Rivett, 508 So.2d at 1359; La. Civ. Code art. 1927; La. Civ. Code art. 3072 ("A compromise shall be made in writing or recited in open court.").

[63] Elder v. Elder & Elder Enterprises, Ltd., 948 So.2d 348, 351 (La. App. 4 Cir. 2007).

[64] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

our client on whether they agree to payment within 30 days. I expect that we can convince them of that. We will let you know when we hear back. We are also checking with our local counsel on accepting the subject pistol.[65]

At 4:02 p.m. on November 6, 2019, Defendants' counsel sent Plaintiff's counsel a second email to accept Plaintiff's settlement offer:

> **We have been instructed by our client to accept your offer** [dated November 5, 2019]. We have confirmed that our client can make payment within 30 days from receiving a signed copy of the release agreement—which I'll draft for your review now. We have also confirmed with our local counsel that they are agreeable to receiving the subject firearm from you.[66]

Defendants explicitly accepted Plaintiff's settlement offer at 4:02 p.m. on November 6, 2019. Nevertheless, Defendants argue that the parties do not have an enforceable settlement agreement because (1) the parties never had a "meeting of the minds" regarding who the confidentiality provision covered and (2) a suspensive condition to the compromise was never fulfilled.[67] The Court will address each of these issues in turn.

### 1. Whether the parties had a "meeting of the minds" regarding the confidentiality provision

A compromise constitutes the law between the parties, and it must be interpreted in accordance with the intent of the parties.[68] A compromise is governed by the general rules of construction that are applicable to contracts.[69] Louisiana Civil Code article 2046 provides that general rule of construction: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." A

---

[65] Rec. Doc. 26-4 at 17; Rec. Doc. 29-1 at 15.

[66] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[67] Rec. Doc. 29 at 11, 13.

[68] *Trahan v. Coca Cola Bottling Co. United*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1106.

[69] *Id.*

compromise extends only to matters the parties intended to settle, and the scope of the transaction cannot be extended by implication.[70]  Louisiana courts "apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances."[71]

Here, on November 5, 2019, Plaintiff's counsel sent the following settlement offer: "We got with [**Plaintiff**]. If [Defendant] Taurus can fund settlement within 30 days, he [that, is **Plaintiff**] is agreeable to settling for $10,000—along with returning the gun, confidentiality and non-disparagement [provisions] . . ."[72] On November 6, 2019 Defendant's counsel responded: "We have been instructed by our client to accept your offer [dated November 5, 2019]. We have confirmed that our client can make payment within 30 days from receiving a signed copy of the release agreement—which I'll draft for your review now."[73] The parties' intent in the quoted email exchange could not be clearer. Plaintiff's settlement offer stated only that Plaintiff would be agreeable to the confidentiality provision.[74] Defendants accepted Plaintiff's unambiguous offer and did so without once mentioning an intent to have Plaintiff's counsel be bound to a confidentiality provision.[75] In sum, because the words of the offer and acceptance are clear, explicit, and lead to no absurd consequences, "no further interpretation of the parties' intent in [the] contract may be made."[76]

---

[70] *Id.* at 1107 (citing La. Civ. Code art. 3073).

[71] *Id.*

[72] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[73] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[74] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[75] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[76] *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 889 F. Supp. 908, 911 (E.D. La. 1995).

Nevertheless, even if the Court were to conduct "further interpretation," Defendants' argument would still fail because they provide no evidence whatsoever to demonstrate the parties ever discussed, negotiated, or mentioned Plaintiff's counsel agreeing to the confidentiality provision before Defendants' acceptance of the settlement offer.[77] For these reasons, on November 6, 2019, a "meeting of the minds" transpired when all parties explicitly agreed in writing that the confidentiality provision applied to Plaintiff.[78]

### 2. Whether a necessary suspensive condition was not fulfilled

Defendants contend that a substantive writing was a suspensive condition to any enforceable compromise.[79] Throughout settlement negotiations, Defendants supposedly "stressed

---

[77] Instead, Defendants point to an email exchange between the parties that occurred *after* Defendants accepted the settlement offer. Rec. Doc. 29 at 5–9, 13.  In that post-settlement-agreement email exchange, Defendants added Plaintiff's counsel as a party to abide by the confidentiality provision. Plaintiff's counsel objected to being added as party to the settlement agreement. Tellingly, despite Plaintiff's objection, Defendant did not object when Plaintiff subsequently sent the Court an email on November 8, 2019 stating: "[T]he parties in this matter have reached a settlement and are working on the terms of the release. We would appreciate it if the Court issued the appropriate 60-day order of dismissal." Rec. Doc. 21.

[78] Defendant erroneously argues that this case is analogous to *KFC Corp. v. Iron Horse of Metairie Rd.*, LLC, No. CV 16-16791, 2019 WL 1125478, at *2 (E.D. La. Mar. 12, 2019). In that case, in a dispute regarding contaminated property, the district court was asked to enforce a settlement agreement. *Id.* at 2. The settlement agreement supposedly formed when the defendants' counsel sent a settlement offer via text message to the plaintiff's counsel, who subsequently called the defendants' counsel and accepted the offer in a telephone conversation. *Id.* The parties then informed the district court that they reached a settlement. *Id.* The district court then issued an order of dismissal. *Id.* Yet, on the same day of the dismissal order, the parties had difficulty agreeing on the terms of the settlement agreement. *Id.* at 3.

Thereafter, the defendants moved to enforce the agreement reached in the telephone conversation. *Id.* at 4. The district court noted the parties disagreed over the agreement's terms immediately after the court issued its dismissal order. *Id.* at 5. The defendants argued that the disagreement occurred because the plaintiff attempted to add new terms into the parties' compromise that transpired over a telephone conversation. *Id.* Yet, without any written agreement, the district court rejected the defendants' argument because "there [was] no documentary evidence establishing that [the plaintiff] agreed to settle this dispute according to the terms in defendants' text message." *See id.* Without any written agreement, the district court found the immediate disagreement over specific terms as evidence the parties never had a meeting of the minds. *See id.* Here, unlike the undocumented agreement in *KFC Corp.*, the parties' agreement is in writing and clearly stated. Thus, the argument that Defendants seek to add new terms—binding Plaintiff's counsel to a confidentiality provision—in the parties' compromise may be considered due to a clearly written agreement before this Court. The presence of a written agreement here makes the *KFC Corp.* case irrelevant for the present matter.

[79] Rec. Doc. 29 at 13.

that any resolution was subject to an agreement on all terms in a written and signed document."[80]

Yet there is a problem with Defendants' argument that neither party mentions. When arguing the

parties agreed to a substantive writing as a suspensive condition, Defendants rely on language in

their expired settlement offer from October 31, 2019, which read as follows:

> In exchange for our client's payment of $10,000 to your client, your client
> provides a full release, dismissal with prejudice, return of the subject pistol,
> confidentiality and non-disparagement agreement, **all subject to the terms of a
> written settlement agreement**. This is a final, take-it-or-leave it offer. **This offer
> expires at close of business on Monday, November 4, 2019**.[81]

Defendants' offer expired on November 4, 2019 at the close of business. Thereafter, on November

5, 2019, Plaintiff's counsel responded with Plaintiff's settlement offer.[82] Plaintiff's settlement

offer read as follows:

> I am just getting back into the office after being out of town. We got with
> [Plaintiff]. If Taurus can fund settlement within 30 days, he [Plaintiff] is agreeable
> to settling for $10,000—along with returning the gun, confidentiality and non-
> disparagement; however, we will not incur any expenses related to returning the
> gun. If you wish, we can get it over to your local counsel.[83]

Noticeably, unlike Defendants' expired settlement offer from October 31, 2019,

Plaintiff's settlement offer does not mention the phrase "all subject to the terms of a written

settlement agreement."[84] Instead of sending a counteroffer, Defendants simply accepted

---

[80] *Id.*

[81] *Id.* at 13–14; Rec. Doc. 26-4 at 19; Rec. Doc. 29-1 at 17.

[82] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[83] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[84] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16. Defendants admitted that their settlement offer from October 31, 2019—which included the phrase "subject to the terms of a written settlement agreement"—expired on November 4, 2019. Defendants' counsel stated at 10:45 a.m. on November 6, 2019: "Our offer expired Monday [November 4, 2019]. But as to your offer, we are checking with our client on whether they agree to payment within 30 days. I expect that we can convince them of that. We will let you know when we hear back. We are also checking with our local counsel on accepting the subject pistol." Rec. Doc. 26-4 at 17; Rec. Doc. 29-1 at 15.

Plaintiff's settlement offer on November 6, 2019: "**We have been instructed by our client to accept your offer** [dated November 5, 2019]. We have confirmed that our client can make payment within 30 days from receiving a signed copy of the release agreement—which I'll draft for your review now."[85] Therefore, the language in Plaintiff's settlement offer from November 5, 2019 is at issue in this matter. That offer, in addition to Defendants' acceptance, never mention any compromise between the parties being "subject to the terms of a written settlement agreement."[86] The Court will not read such a phrase into the parties' agreement. Accordingly, the parties' agreement did not include a substantive writing as a suspensive condition.

Nevertheless, even if the Court were to read the phrase "subject to the terms of a written agreement" into the parties' agreement, the Court would hold that phrase is not a suspensive condition. Pursuant to Louisiana Civil Code article 1767, a "conditional obligation is one dependent on an uncertain event" and, "if the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."[87] "The right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met."[88] Yet Louisiana courts have held that a "settlement agreement may be binding even if it is subject to later formalities that do not occur."[89] The ultimate question is whether the parties intended to be bound by the agreement.[90]

---

[85] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[86] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

[87] La. Civ. Code. art. 1767.

[88] *Hampton v. Hampton, Inc.*, 97-1779 (La. App. 1 Cir. 6/29/98), 713 So. 2d 1185, 1190.

[89] *Administrators of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. CIV. A. 08-5096, 2011 WL 692045, at *4 (E.D. La. Feb. 18, 2011).

[90] *Id.* (citing *Chevron U.S.A. Inc. v. Martin Exploration Co.*, 447 So.2d 469, 472 (La. 1984)).

For instance, in *Pierre v. T&K Express, Inc.*, another judge in the Eastern District of Louisiana analyzed whether multiple parties agreed to an enforceable compromise in an automobile-accident case.[91] In *Pierre*, the defendants' counsel sent a typed letter agreement (the "Letter Agreement") to the plaintiffs' counsel.[92] The Letter Agreement stated: "This will confirm, pursuant to our telephone conversation, that your client . . . is willing to settle any and all claims, known or unknown, past, present or future arising out of or any way related to the accident which is the subject to this litigation."[93] Importantly, the Letter Agreement also stated that the "settlement is explicitly conditioned upon your and your client's agreement to and execution of a subsequent Receipt, Release, Indemnity, and Hold Harmless Agreement, the terms of which will more fully document the agreement of the parties, and which, at a minimum, will include the following terms."[94] The "following terms" required all four plaintiffs to execute a release.[95] The defendants' counsel referred to the Letter Agreement as a "preliminary agreement" and stated that the attorneys would "need to both agree and execute [the release] before there is any settlement."[96]

Thereafter, some plaintiffs signed the Letter Agreement, but these plaintiffs eventually

---

[91] *Pierre v. T&K Express, Inc.*, No. CV 17-1013, 2018 WL 1413233, at *2 (E.D. La. Jan. 9, 2018) (van Meerveld, M.J.), report and recommendation adopted, No. CV 17-1013, 2018 WL 1413042 (E.D. La. Mar. 19, 2018) (Engelhardt, J.), order clarified, No. CV 17-1013, 2018 WL 5774321 (E.D. La. Nov. 2, 2018) (Lemmon, J.).

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Id.*

had second thoughts about the Letter Agreement.[97] When arguing the Letter Agreement did not constitute an enforceable compromise, Plaintiffs emphasized the "preliminary nature" of the Letter Agreement and argued "there [was] no written settlement agreement binding the parties."[98] The court in *Pierre* easily rejected the plaintiffs' argument because "[t]here is ample persuasive case law in support of Defendants' position that a signed Letter Agreement such as this is sufficient to bind the settlement, regardless of whether any follow up documentation is executed, even where, as here, additional documentation is clearly contemplated by the first agreement."[99] The court in *Pierre* noted that a "settlement agreement may be binding even if it is subject to later formalities that do not occur."[100] Thus, despite the parties' agreement being "explicitly conditioned upon . . . execution of a subsequent Receipt, Release, Indemnity, and Hold Harmless Agreement," the parties nevertheless had an enforceable agreement even though the final release document was not executed.[101]

In this case, the parties' agreement even falls short of the insufficient language in *Pierre* because it does not mention an enforceable compromise being subject to any substantive writing.[102] Nonetheless, assuming this Court read the language from Defendant's expired settlement offer—"subject to the terms of a written agreement"—into the parties' agreement, that language would not constitute a suspensive condition because the parties' written agreement via

---

[97] *Id.*

[98] *Id.* at *4.

[99] *Id.*; *see, e.g., Elder*, 948 So. 2d at 351; *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 1998-0193, p.3 (La. App. 4th Cir. 9/30/98), 720 So.2d 372, 374.

[100] *Pierre v. T&K Express, Inc.*, 2018 WL 1413233 at *4 (quoting *Tulane Educ. Fund*, 2011 WL 692045 at 4).

[101] *Id.*

[102] Rec. Doc. 26-4 at 18; Rec. Doc. 29-1 at 16.

emails is sufficient to bind the settlement, regardless of whether the execution of any follow up documentation was contemplated.[103] Simply put, a "settlement agreement may be binding even if it is subject to later formalities that do not occur."[104]

## B.   *Whether Plaintiff is Entitled to Attorney Fees*

Plaintiff requests attorney fees in connection with the instant motion because Defendants' opposition is "contrary to the law and unsupportable."[105]  Plaintiff invokes this Court's inherent power to sanction a party for opposing a motion in bad faith.[106] A federal court's inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases" includes "the ability to fashion an appropriate sanction for conduct which *abuses the judicial process*."[107] The court may use its inherent power to sanction conduct "only if essential to preserve the authority of the court."[108]

One permissible sanction is "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side."[109] Indeed, this Court "may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[110] The Fifth Circuit, in *Seals v. Herzing Inc.*, held that a district court does not abuse its discretion when

---

[103] *See Elder*, 948 So. 2d at 351; *Walk Haydel*, 720 So.2d at 374.

[104] *Pierre*, 2018 WL 1413233 at 2 (quoting *Tulane Educ. Fund*, 2011 WL 692045 at 4).

[105] Rec. Doc. 26-1 at 8.

[106] *Id.*

[107] *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks and citation omitted) (emphasis added).

[108] *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (internal quotation marks and citation omitted).

[109] *Goodyear Tire*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks and citation omitted).

[110] *Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012) (internal quotation marks and citation omitted).

awarding attorney fees and costs because the party's position was "unsupportable," "unfounded in the record," "dangerously borders on frivolous," and "without justification."[111]

Here, in support of his request for attorney fees, Plaintiff argues in a conclusory manner that Defendants' position is "contrary to the law and unsupportable."[112] The Court cannot find any evidence in the record that Defendants' opposition was in bad faith or, alternatively, constituted vexatious behavior. For these reasons, the Court denies Plaintiff's request for attorney fees.

## V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Thomas Giluso's "Motion to Enforce November 6, 2019 Settlement Agreement Between the Parties"[113] is **GRANTED** to the extent it requests the settlement agreement be enforced and **DENIED** to the extent it requests attorney fees and costs associated with the instant motion.

**NEW ORLEANS, LOUISIANA**, this ___13th__ day of April, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[111] *Id.*

[112] Rec. Doc. 26-1 at 8.

[113] Rec. Doc. 26.

18